## Case No. 17,957.

WOOD v. MICHIGAN S. & N. I. R. CO.

[2 Biss. 62; 3 Fish. Pat. Cas. 464.] [1]

Circuit Court, D. Indiana.   Nov., 1868.

RENEWAL OF PATENT—RIGHTS OF ASSIGNEE.

1. The assignee of a patent holding at the expiration of the first term a right during that term to "make, construct and use" the article patented, may, during the term of its subsequent extension, continue to use it and even repair it, but is not entitled to make it for use, or for any other purpose.

2. Section 18 of the act of July 4, 1836 [5 Stat. 124], construed.

3. Whether this doctrine applies to a process, quære.

This was a bill in equity, filed to restrain the defendant from infringing letters patent for an "improvement on the mode of operating brakes for cars," granted to Nehemiah Hodge, October 2, 1849, re-issued March 1, 1853, extended to him for seven years from October 2, 1863, and by mesne assignments vested in complainant within and for the territory within which the defendant's road was operated.

F. L. Ketchum, for complainant.
Wing & Niles, for defendant.

McDONALD, District Judge.   This is a proceeding in chancery, submitted to us for hearing and decree on the bill, answer, exhibits, depositions and certain admissions of the parties, made in open court.

The bill charges that on October 2, 1849, one Nehemiah Hodge duly became the patentee of a new and useful improvement in the mode of operating brakes for railroad cars; that by reason of an inadvertence in the description thereof, another patent for the same invention was issued to him, to take effect from the date of the first, for the term of fourteen years; that on September 16, 1863, the commissioner of patents renewed and extended to Hodge the same patent, for the further term of seven years; and that by the various assignments set out in the bill, the complainant, several years ago, became and now is the legal and equitable owner of so much of the patent right and extension as is included within the territory within which the defendant's railroad is situate.   The bill further charges that the defendant, in violation of the rights of the complainant, has "for a long time heretofore manufactured, vended and used, and is still using, manufacturing and vending within said territory a large number of brakes for cars, each embracing substantially in principle, construction and mode of operation, said improvement."

The bill shows that by various litigations with other railroad companies the complainant has established his exclusive right to make, vend and use said improvement, and prays a temporary injunction and general relief.

The answer admits the issuance of the letters patent and the renewal as stated in the bill; that the defendant has manufactured and used on its road, and still manufactures and uses thereon, the brakes in question. But it denies that the defendant has ever manufactured for sale or sold any of these brakes.   The answer claims that the defendant has the right to manufacture for the use of the railroad company, and to use on its road, the brakes in question.   The answer founds this claim on two assignments, of which exhibits are filed.   The first of these assignments is by Stephen M. Whipple, whom the bill alleges to have been the owner of so much of the patent right as relates to the state of Indiana.   The other assignment is from Hodge, himself.

The assignment from Whipple is dated November 14, 1854.   This assignment, after reciting that Hodge had conveyed to Whipple, on July 28, 1852, the right to his patent brakes for the state of Ohio, etc., purported to transfer to the defendant, in consideration of five hundred dollars, the right to construct and use these brakes on any and all cars belonging to the defendant, "to the extent following, viz.: from Toledo to Chicago, and branches; also the right of running their said cars, with the said improvement thereon, on and over other roads having purchased the like rights, for and during the term for which said letters patent are or may be granted."

The assignment from Hodge, dated January 17, 1854, after divers recitals, purports to assign to the defendant the right to construct, make and use said improvement on any and all cars belonging to said company and used on their said railroads, for and during the term for which said letters patent were granted.

There is the general replication.   The existence and due execution of all the letters patent and assignments mentioned in the answer and bill are admitted in open court by all the parties.   Nor does the complainant deny that by virtue of the said assignments to the railroad company the defendant had the right to make and use on the company's road these brakes during the first fourteen years of the existence of the patent right.   Nor is it claimed in argument that the defendant has ever manufactured for sale or sold any of these brakes.   But the complainant insists that said assignments to the defendant are no justification on the part of the company to make and use these brakes after the first fourteen years of the patent; and the defendant insists, on the contrary, that said assignments gave to the company the right to make and use the brakes as well during the period of the renewal as during the first fourteen years of the patent.   And this is really the only

1 [Reported by Josiah H. Bissell, Esq., and by Samuel S. Fisher, Esq., and here reprinted by permission.]

question of any consequence in dispute between the parties.

In support of the ground thus assumed by the complainant, he argues that the words of the assignments to the defendant expressly limit the right of the company to make and use these brakes to the term of first fourteen years. As we have already seen, Whipple's assignment is "for and during the term for which said letters patent are or may be granted," and it was executed within the first fourteen years of the patent. Hodge's assignment was made to the defendant within the same period, and for and during the term for which said letters patent are granted.

Construing these two assignments without reference to the act of congress on the subject of patent rights, we should not hesitate to say that they convey no authority to the defendant to manufacture and use the brakes in question after the expiration of the first term of fourteen years of the patent; and that the subsequent making and using of them was a violation of the complainant's right. Indeed, the counsel for the defence seem to agree with us in this. But they argue that in construing the assignments we must take into consideration the eighteenth section of the patent act of July 4, 1836. That section provides that "the benefit of such renewal shall extend to assignees and grantees of the right to use the thing patented to the extent of their respective interests therein." 5 Stat. 124.

To every assignee or grantee of a patent holding the right at the expiration of the first term of it, to use the thing patented, this section of the act plainly gives the same right to use it during the term of the renewal of the patent, exactly to the extent to which he had the right to use it under the first term of the patent. And it is clear that he may not only use it, but repair it for use till it is worn out. So the supreme court has decided. Wilson v. Rousseau, 4 How. [45 U. S.] 646.

On the contrary, it is equally clear that this section does not authorize the assignee or grantee either to sell or to manufacture for sale the thing patented, for the terms of the section only embrace "assignees and grantees of the right to use."

But the case at bar occupies a middle ground. Here the assignee is not an assignee of the right to make for sale or to sell, nor an assignee of the right merely to use, but an assignee of the right to "make and use." And the defendant, disclaiming the right either to manufacture for sale or sell, insists merely on the right to make for use on the company's road, and to use on that road, the brakes in question.

Now it is conceded by the complainant that the defendant has the right to use any of these brakes during the renewal of the patent, which the company may have had on hand at the expiration of the first fourteen years, and even to repair them till they wear out.

But the complainant insists that the defendant has no right, by virtue of said eighteenth section, to proceed after the expiration of the first fourteen years to make brakes to be used on the company's road, and whether the defendant has this right is exactly the point in controversy.

There is no decision of the supreme court which seems to us to favor this claim of the defendant. On the contrary, several decisions of that court seem to be against it. The case of Wilson v. Rousseau, above referred to, certainly is unfavorable to it. Indeed, in that case several of the judges held that the right of an assignee, for the first term of the patent, to use the thing patented was not available under a subsequent renewal of the patent, unless such right under that renewal was plainly given by the terms of the assignment.

It is true that a majority of the court held otherwise, though with some hesitation. And in the opinion of the majority strong language is employed, strictly confining the assignee to the right to use the thing patented, and more than intimating a doubt whether he could make it. In referring to the eighteenth section of the patent act, the court says: "The clause is as follows: 'And the benefit of such renewal shall extend to assignees and grantees of the right to use the thing patented to the extent of their respective interests therein.' It will be seen that the word 'exclusive' used to qualify the right of a grantee, in the eleventh section, and, indeed, always when referred to in the patent law, and also the words 'to make' and 'to grant to others to make and use' are dropped, so that not only no exclusive right in the grantee, in terms, is granted or secured by the clause, but no right at all—no right whatever—to make or to grant to others to make and use the thing patented. * * * The clause, therefore, in terms, seems to limit studiously the benefit or reservation, or whatever it may be called, under or from the new grant, to the naked right to use the thing patented." Wilson v. Rousseau, 4 How. [45 U. S.] 660, 681. This ruling in Wilson v. Rousseau was afterward approved in the case of Simpson v. Wilson, 4 How. [45 U. S.] 709.

The same doctrine was adhered to in Wilson v. Simpson, 9 How. [50 U. S.] 109. And Mr. Justice Wayne, in delivering the opinion of the court in that case, said that the decision in Wilson v. Rousseau "does not permit an assignee of the first term of a patent, after its renewal and extension, to make other machines."

The subsequent cases of Bloomer v. McQuewan, 14 How. [55 U. S.] 539; Chaffee v. Boston Belting Co., 22 How. [63 U. S.] 217; Bloomer v. Millinger, 1 Wall. [68 U. S.] 340—all recognize and approve the same doctrine.

The doctrine established in all these cases

is that an assignee of a patent, holding at the expiration of the first term a right during that term to make and use the thing patented, may, during the time of its subsequent extension, continue to use it and even repair it for use; but that he cannot make it for use or for any other purpose.

It is true that in the cases in the supreme court referred to there was a remarkable diversity of opinion among the judges; but that diversity had no reference to anything favorable to the defense in this case. It seems to have arisen solely from an opinion on the part of a minority of the judges, that the assignee of a patent for its first term had no right even to use the thing patented, after the expiration of that term, unless the assignment by its terms gave him that right, and this circumstance may well admonish us not to extend this right to the thing patented.

Counsel for the defendant seem virtually to admit that if, in this case, there had only been the purchase of a right to make and use one of these brakes, the right would have been gone when that brake was worn out. But they earnestly argue that when, as in the present case, the right is granted to make and use an indefinite number of them, without any limitation except as to locality, it substantially amounts to a grant to use the invention in order to construct brakes, as well as the right to use the brake so constructed. There would be plausibility to this argument if applied to a process patented; for example, to a process by which several ingredients are so combined as to produce some valuable chemical result. For in such a case the right assigned would not be the right to make a machine and use it, but the right to use a process. A process is not made, but used. But the case at bar involves no question concerning process; it only touches the right to make and use machines. And we cannot see how the eighteenth section of the patent act, when applied to the right to make and use one machine, should receive a construction different from what ought to be given to it when applied to the right to make and use an indefinite number of machines.

Counsel for the defense called our attention to the case of Day v. Union India Rubber Co. [Case No. 3,691], as supporting their view. The things patented in that case were a process and machinery for the manufacture of India rubber goods—at least the learned judge held that it embraced both a process and machinery. And he decided that the assignee of the first term of the patent had the right to avail himself of the thing assigned during the term of the renewal of the patent, whether the patent was to be construed as being for a process, or for a process alone, or for a machine alone, and whether the machinery used by him was or was not in existence prior to the commencement of the extended term. In thus concluding, Judge Hall's argument is ingenious and able, although to us not very convincing. He concludes that "if the only right to use were one which resulted from the purchase and ownership of a machine, the right to use it is co-extensive with the existence of such machine, and necessarily expires with it." He admits that his view of the question is in conflict with the reasoning of the supreme court in Wilson v. Rosseau. But he insists that reasoning is mere dicta, and does not bind him. We are not sure that the reasoning in that case was dicta only. We can hardly regard the language of Mr. Justice Nelson, which we have cited from that case, and that of Chief Justice Taney in Bloomer v. McQuewan [supra], as mere dicta. But whether in this we are right or not, we regard the reasoning of these eminent judges on the point under consideration as sound, and adopt and follow it. Were there no precedents of the supreme court on the questions before us, we might be disposed, though reluctantly, to follow the decision in Day v. Union India Rubber Co. [supra]. But believing, as we do, that the supreme court has settled the very point in question, we must follow the decision. We think the construction given by that court to the eighteenth section of the patent act is plainly this: That every assignee of the right to use the thing patented has the same right to use it during the period of its renewal that he had during the first term of the patent; but that he had no right, after the expiration of the first term, to make the article patented, arising out of an assignment executed before the renewal, and not expressly giving him the right to make it after the renewal. The rule thus settled by the supreme court seems to us to be a reasonable one; and it has the advantage of being a very plain and practicable rule. We cheerfully follow it; and we are the more disposed to do so because Judge Story in Woodworth v. Sherman [Case No. 18,019], has decided that an assignee under an original patent does not acquire any right under an extension of it, unless such right is expressly conveyed to him by the patentee; and because it is well known that Justices McLean, Wayne, Woodbury and Thompson agreed with Judge Story on that point. [Wilson v. Rousseau, 4 How. (45 U. S.) 688, 692, 693.] [2]

Upon the whole, therefore, we are of the opinion that in the making and using of the brakes, so made since the expiration of the first term of the patent in question, by the defendant, the complainant's rights have been infringed; and that for this infringement he is entitled to recover damages, and to have a perpetual injunction. But forasmuch as we are not able, from the data now before us, to determine accurately the amount of the complainant's damages, we refer the matter to the master to ascertain in the proper way, and to report the amount of damages which the complainant ought to recover.

In the investigation of the questions here de-

[2] [From 3 Fish. Pat. Cas. 464.]

cided, I have consulted Associate Justice Davis, and he fully agrees with me in the views above expressed.

[For other cases involving this patent, see note to Hodge v. North Missouri & I. M. R. Co., Case No. 6,561.]